IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA R. COWELL, | ) | Case No. 5:22-cv-2084 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVID W. GRAY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

On September 20, 2010, Joshua R. Cowell forced a woman, who had visited his house to inquire about a desk Cowell had listed for sale, at knifepoint, to fellate him.  The next day, Cowell broke into a neighbor's house and attacked her as she slept, causing physical injuries. Cowell would later claim that he was legally insane.  After two psychiatric evaluations, however, the Summit County, Ohio, Court of Common Pleas determined that Cowell was sane at the time of the offenses.  Cowell thereafter pleaded guilty to aggravated battery, felonious assault, kidnapping, and rape and was sentenced to serve 25 years.

Cowell, pro se, now petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, raising four claims for relief premised on the discovery of evidence indicating that his offense conduct was the result of then-unknown side effects of Abilify.  ECF Doc. 1.  Cowell asserts:

> **Ground One**: The Ohio courts erred when they found that Cowell unduly delayed in seeking to withdraw his plea, because he could not have known of the side effects of Abilify at the time of the offense.  *See* ECF Doc. 1 at 6–7.

**Ground Two**: The Ohio courts misapplied Ohio Rev. Code §§ 2901.21(A) and 2901.22(B), because the side effects of Abilify caused Cowell to be in a "blackout state" at the time of the offenses.  *See* ECF Doc. 1 at 8–9.

**Ground Three**: The Ohio courts failed to recognize that the side effects of Abilify rendered Cowell legally insane at the time of the offenses.  *See* ECF Doc. 1 at 9–10.

**Ground Four**: Cowell's plea was involuntary because he was unaware of the Abilify's role in his criminal conduct at the time.  *See* ECF Doc. 1 at 11–12.

Respondent, Warden David Gray, in turn, moved to dismiss Cowell's petition as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations.  ECF Doc. 6.  Cowell filed a traverse, along with a motion to expand the record.  ECF Doc. 8-2; ECF Doc. 9.

Because Cowell's motion to expand the record proposes material relevant to the timeliness of his petition, his motion (ECF Doc. 9) is GRANTED.  Even with that evidence, however, his petition is untimely.  Thus, I recommend that Warden Gray's motion (ECF Doc. 6) be GRANTED, that Cowell's claims be DISMISSED, and that Cowell's § 2254 petition be DENIED.  I further recommend that Cowell not be granted a certificate of appealability.

# I.    State Court History

## A.    Trial Court

On October 5, 2010, a Summit County grand jury returned an indictment charging Cowell with: one count of kidnapping (Count One); one count of aggravated burglary (Count Two); and one count of felonious assault (Count Three).  ECF Doc. 6-1 at 6–7.  The grand jury later returned a supplemental indictment, additionally charging Cowell with one count of rape (Count Four) and two counts of kidnapping (Counts Five and Six).  ECF Doc. 6-1 at 9–11.  The offense dates alleged were September 20, 2010 (Counts Four through Six) and September 21,

2010 (Counts One through Three).  ECF Doc. 6-1 at 6–7, 9–11.  Cowell pleaded not guilty by reason of insanity ("NGRI").  ECF Doc. 6-1 at 8, 12–13.

On December 14, 2010, the trial court referred Cowell for an evaluation into his competency to stand trial and NGRI eligibility.  ECF Doc. 6-1 at 12–13.  On January 25, 2011, the court determined, based on a psychiatric report to which the parties stipulated, that Cowell was competent to stand trial and scheduled a hearing on Cowell's NGRI eligibility.  ECF Doc. 6-1 at 14.  On February 22, 2011, the court granted Cowell a continuance so he could obtain a second opinion.  Summit Cnty. Ct. of Comm. Pleas, No. CR-2010-09-2645, Journal Entry dated 3/02/2011.  On March 29, 2011, the court held a hearing on Cowell's NGRI eligibility and, based on the evidence presented, determined that he was legally sane at the time of the offenses.  ECF Doc. 6-1 at 15.

On April 26, 2011, Cowell changed his plea pursuant to a negotiated plea agreement. ECF Doc. 6-1 at 16; Summit Cnty. Ct. of Comm. Pleas, No. CR-2010-09-2645, Written Plea of Guilty.  Cowell agreed to plead guilty to Counts Two, Three, Four, and Six.  ECF Doc. 6-1 at 16. The state agreed to dismiss the remaining counts.  *Id.*  The trial court accepted Cowell's plea and found him guilty of Counts Two, Three, Four, and Six.  ECF Doc. 6-1 at 16–17.  The court sentenced Cowell to an aggregate prison sentence of 25 years, consisting of: a 7-year term on Count Two; 5-year terms each of Counts Three and Four; and an 8-year term on Count Six.  ECF Doc. 6-1 at 19–20

The journal entry of Cowell's convictions was entered on June 16, 2011.  ECF Doc. 6-1 at 17, 651–52.  Cowell did not pursue a direct appeal.  *See* ECF Doc. 6-1 at 651.

### B.      Motion for "Sentencing"

Over four years later, on October 7, 2015, Cowell filed a pro se motion for "sentencing," arguing that his convictions were void because of defects in the June 16, 2011 sentencing journal entry and an inconsistency between the sentence described in the plea agreement and the sentence imposed.  *See* ECF Doc. 6-1 at 21–31.  The state filed a memorandum in opposition. ECF Doc. 6-1 at 32–34.

On October 19, 2015, the trial court construed Cowell's motion as an Ohio Rev. Code § 2953.21 petition for postconviction relief.  ECF Doc. 6-1 at 35–36.  The court denied the petition as untimely and, alternatively, determined that Cowell's claims were barred by Ohio's res judicata doctrine.  ECF Doc. 6-1 at 36–37.  Cowell did not appeal.  *See* ECF Doc. 6-1 at 651.

### C.      First Motion to Vacate

On December 14, 2015, Cowell filed a pro se motion to vacate his convictions, arguing that: (i) his felonious assault and rape convictions should have merged with his aggravated burglary and kidnapping convictions; and (ii) the trial court failed to make the requisite statutory findings before imposing consecutive sentences.  ECF Doc. 6-1 at 38–46.  The state filed a memorandum in opposition.  ECF Doc. 6-1 at 47–48.  Cowell filed a response.  ECF Doc. 6-1 at 49–52.

On January 15, 2016, the trial court denied Cowell's motion to vacate, determining that his claims were barred by Ohio's res judicata doctrine.  ECF Doc. 6-1 at 53–55.  Cowell did not appeal.  *See* ECF Doc. 6-1 at 651.

### D.      Second Motion to Vacate

On June 10, 2016, Cowell filed a second pro se motion to vacate, reasserting the claims from his first motion to vacate.  ECF Doc. 6-1 at 56–64.  The state filed a memorandum in

opposition.  ECF Doc. 6-1 at 65–66.  On August 15, 2016, the trial court denied Cowell's second motion to vacate on the same grounds as his first.  ECF Doc. 6-1 at 67–68.  Cowell did not appeal.  *See* ECF Doc. 6-1 at 651.

### E.    First Complaint for Writ of Mandamus

On June 13, 2016, Cowell filed a pro se verified petition for a writ of mandamus and, in the alternative, writ of procedendo, directing the trial court to vacate his convictions.  ECF Doc. 6-1 at 69.  Cowell's grounds for issuance of a writ were the same as the claims in his motions to vacate.  ECF Doc. 6-1 at 69–78.  The state filed a motion to dismiss.  ECF Doc. 6-1 at 79–86.

On June 19, 2016, the Ohio Court of Appeals dismissed Cowell's petition for failure to comply with the mandatory requirements of Ohio Rev. Code § 2969.25.  ECF Doc. 6-1 at 88–89.  On August 23, 2016, Cowell appealed.  ECF Doc. 6-1 at 89–90, 118–35.  The state filed an appellee brief.  ECF Doc. 6-1 at 155–66.  On October 12, 2017, the Ohio Supreme Court affirmed the Ohio Court of Appeals' decision.  ECF Doc. 6-1 at 168–70.

### F.    Second Complaint for Writ of Mandamus

On May 31, 2018, Cowell filed a second pro se verified petition for a writ for mandamus, reasserting the claims from his first verified petition.  ECF Doc. 6- at 171–78.  On June 7, 2018, the Ohio Court of Appeals *sua sponte* dismissed Cowell's verified petition for noncompliance with Ohio Rev. Code § 2969.25.  ECF Doc. 6-1 at 188–89.  Cowell did not appeal.  *See* ECF Doc. 6-1 at 657.

### G.    Third Complaint for Writ of Mandamus

On October 18, 2018, Cowell filed a third pro se verified petition for a writ of mandamus, raising for a third time the claims from his first and second verified petitions.  ECF Doc. 6-1 at

190–97.  The state filed a motion to dismiss, and Cowell filed a memorandum in opposition.

ECF Doc. 6-1 at 207–18.

On December 26, 2018, the Ohio Court of Appeals dismissed Cowell's third verified

petition, determining that he had an adequate remedy at law to address his sentencing claims by

way of a direct appeal.  ECF Doc. 6-1 at 219–21.  On February 4, 2019, Cowell appealed.  ECF

Doc. 6-1 at 222–23, 239–50.  The state filed an appellee brief.  ECF Doc. 6-1 at 262–68.  On

July 16, 2019, the Ohio Supreme Court affirmed the Ohio Court of Appeals' decision.  ECF Doc.

6-1 at 269–71.

### H.      Leave to File Motion for New Trial

On November 11, 2020, Cowell filed, through counsel, a motion for leave to file a

motion for new trial, under Ohio Crim. R. 33(B), based on newly discovered evidence.  ECF

Doc. 6-1 at 272–73.  Cowell argued that he had been hospitalized shortly before the offenses and

prescribed Abilify, after which he experienced blackouts, compulsive/impulsive behavior,

memory loss, and sleepwalking.  ECF Doc. 6-1 at 274–75.  He also did not remember the acts

giving rise to his charges, describing it as a "blackout."  ECF Doc. 6-1 at 275.  Cowell argued

that there was now new evidence which showed that these were side effects of Abilify, and that it

was Abilify that caused his offense conduct.  *Id.*

Cowell argued that his new evidence consisted of a report from an expert witness Cowell

retained as part of a pending class-action lawsuit brought by individuals who suffered

undisclosed side effects from Abilify.  ECF Doc. 6-1 at 275–76.  Cowell argued that evidence of

Abilify's previously unknown side effects would support as viable affirmative defenses that:

(i) he acted involuntarily; and (ii) he lacked the mental state for any of the charges.  ECF Doc. 6-

1 at 276–78.  And Cowell argued that he was unavoidably prevented from discovering this new

evidence because Bristol-Myers Squibb only began warning consumers of Abilify's side effects in 2016; the first Abilify-related lawsuit was filed in October 2016; and the expert report was rendered on August 30, 2020.  ECF Doc. 6-1 at 278–79.

Cowell attached a discharge summary from the Windsor-Laurelwood Center for Behavioral Health ("Windsor").  *See* ECF Doc. 6-1 at 281–84.  The discharge summary indicated that Cowell was hospitalized at Windsor from September 12 to 18, 2010 due to suicidal thoughts.  ECF Doc. 6-1 at 283.  At the time of admission, Cowell reported taking Abilify, Adderall, and Klonopin for chronic paranoid schizophrenia and symptoms of suicidal thoughts, paranoia, and auditory hallucinations.  *Id.*  Cowell received counseling services and medication treatment, during which the attending physician discontinued Adderall and Klonopin.  *Id.* Cowell was discharged in stable condition with diagnoses of chronic paranoid schizophrenia and cocaine abuse.  *Id.*  He was prescribed Prozac and Abilify.  *Id.*

Cowell also attached the expert report of Frank A. Fetterolf, MD.  ECF Doc. 6-1 at 285–89.  Based on the information provided by Cowell, Dr. Fetterolf opined that: (i) Cowell's "alleged injuries (i.e., memory loss and blackout) are consistent with Abilify-related side effects (compulsivity)"; (ii) Cowell's offense conduct "could reasonably be understood to be compulsive"; and (iii) "Abilify *did* cause [Cowell's] injury (compulsivity) . . . ."  ECF Doc. 6-1 at 286–87 (emphasis in original).

In support of his opinions, Dr. Fetterolf explained there was a clinical association between compulsivity (an automatic behavior) and the use of Abilify.  ECF Doc. 6-1 at 287. Dr. Fetterolf stated that Cowell's diagnosis and Abilify dosage, the temporal proximity between prescription and onset of effects, and Cowell's behavioral symptoms (compulsive sexual behavior and hypersexuality) were consistent with Cowell's "injury."  *Id.*  And Dr. Fetterolf

7

stated that Cowell was at high risk for Abilify-precipitated compulsivity because of his past trauma, schizophrenia, and cocaine use.  *Id.*

The state filed an opposition brief.  ECF Doc. 6-1 at 290–95.  On November 24, 2020, the trial court denied Cowell's motion as precluded by his guilty plea.  ECF Doc. 6-1 at 296–97.  Cowell did not appeal.  *See* ECF Doc. 6-1 at 650.

### I.      Motion to Withdraw Guilty Plea

On April 14, 2021, Cowell filed, through counsel, a motion to withdraw his guilty plea, under Ohio Crim. R. 32.1.  ECF Doc. 6-1 at 298–99.  Cowell reasserted the arguments in support of his motion for leave to file a motion for new trial, arguing that the new evidence of Abilify's side effects rendered his guilty plea involuntary because he did not know the side effects would support viable affirmative defenses that he lacked the mental state to commit the offenses and acted involuntarily.  ECF Doc. 6-1 at 300–05.  The state filed an opposition brief.  ECF Doc. 6-1 at 309–15.

Cowell filed a reply brief, adding that his prisoner status was a factor which inhibited him from learning of Abilify's side effects and that the new evidence would support an insanity defense.  ECF Doc. 6-1 at 316–23.  Cowell attached additional medical records from Windsor and Dr. Fetterolf's opinion.  *See* ECF Doc. 6-1 at 327–516, 519–23.  The Windsor medical records included Cowell's initial assessment, in which he reported: "I am extremely violent." ECF Doc. 6-1 at 417.  Cowell reported his three worst problems as anger, impulse control, and violence.  ECF Doc. 6-1 at 427.  Cowell reported that his hospital visit was precipitated by a cocaine overdose, of which he did "as much as possible."  ECF Doc. 6-1 at 430.  And Cowell reported that he also consumed crack, Percocet, and Vicodin.  ECF Doc. 6-1 at 432.

In a separate medical record, Cowell's wife reported that he "does well on Abilify when not high on crack" and that he "abuses Klonopin and Adderall," consuming a month's worth of medication in a week.  ECF Doc. 6-1 at 462–63.  A post-discharge note indicated that Cowell's wife reported Cowell "was arrested on Monday[,] drank/blacked out."  ECF Doc. 6-1 at 372.

On June 22, 2021, the trial court denied Cowell's motion to withdraw his guilty plea. ECF Doc. 6-1 at 524–28.  The court found that Dr. Fetterolf's opinion would not support a viable affirmative defense, because: (i) Ohio law did not recognize a diminished capacity defense; and (ii) expert psychiatric testimony was inadmissible to negate the mens rea required for a particular crime.  ECF Doc. 6-1 at 526–27.  The court also stated that:

> On review, the Court finds that [Cowell] has not established manifest injustice.  [Cowell] seems to argue that the only drug he was taking during the two assaults was Abilify.  But [Cowell] himself admitted to taking sixty Adderall tablets during the period [of] September 20-21, 2010.  [Cowell] does not state how much Abilify he took during the period [of] September 12-21, 2010, or how the Adderall or any other drugs, legal or illegal, he may have taken would have interacted with the Abilify.

> While [Cowell] indicates that the alleged Abilify side effects became known in 2016, he does not indicate when he became aware of them.  The Court finds that waiting five years to bring the instant motion is an undue delay.  In addition, the Court finds that the State would be subjected to extreme prejudice if [Cowell's] motion were granted, as over ten years ha[ve] passed since [Cowell] entered his plea.

ECF Doc. 6-1 at 527–28.

On July 21, 2021, Cowell, pro se, appealed, asserting five "Propositions of law":

**Proposition of law 1**: Court fails to recognize that Mr. Cowell could have never known of the side effects of Abilify at the time of the crime[.]

**Proposition of law 2**: The lower Court failed to apply RC 2901.22 correctly due to the time of this case[.]

**Proposition of law 3**: Court erred by not applying RC 2901.21(A) toward this case properly.

> **Proposition of law 4**: [Cowell] is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law[.]
>
> **Proposition of law 5**: [Cowell's] challenging the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary.

ECF Doc. 6-1 at 529, 538.

Cowell argued that he should have been allowed to withdraw his guilty plea because he could not have known of Abilify's effects on his conduct at the time of the offenses, given that Bristol-Myers Squibb didn't release information about Abilify's harmful side effects until 2016. ECF Doc. 6-1 at 539–41.  He argued that the trial court misapplied Ohio Rev. Code § 2901.22, because it relied on the 2015 iteration of the statute, whereas the law in effect at the time of the offenses defined "knowingly" differently.  ECF Doc. 6-1 at 541.  He argued that the court also misapplied § 2901.21(A), because: (i) he was not voluntarily under the influence of Abilify, as he was required to take the medication; and (ii) Dr. Fetterolf's opinion was admissible to describe his diagnosis and treatment, as well as to show that he did not know what he was doing while committing the crimes.  ECF Doc. 6-1 at 542–43.

Cowell further argued that he only pleaded guilty after being taken off Abilify and learning for the first time from counsel what had transpired.  *See* ECF Doc. 6-1 at 543–46.  He argued that the side effects of Abilify would support an insanity defense.  *See id.*  And in support of his ineffective assistance claim, Cowell argued that his "case is centered around medication that he was require[]d to take and that Bristol Meyer-Squibb [sic] is liable for his injuries because they failed to provide an adequate warning that taking Abilify caused impulsive gambling and impulsive urges."  ECF Doc. 6-1 at 547.  Cowell attached to his appellate brief various news articles regarding Abilify.  *See* ECF Doc. 6-1 at 548–53.

10

The state filed an appellee brief, and Cowell filed a reply brief.  ECF Doc. 6-1 at 560–608.  As relevant here, Cowell's reply brief argued his use of illicit drugs and abuse of prescription medication were impulsive behaviors brought on by Abilify.  ECF Doc. 6-1 at 599.  He further argued that he first learned of Abilify's side effects in "December of 2019, when advertisements on television began to discuss the multi-district lawsuit."  ECF Doc. 6-1 at 606.  By that time, he argued that the Covid-19 pandemic and related law library closures restrictions delayed him from timely filing his motion for relief.  ECF Doc. 6-1 at 606–07.

On May 25, 2022, the Ohio Court of Appeals overruled Cowell's assignments of error and affirmed the trial court's decision.  ECF Doc. 6-0 at 609–16; *State v. Cowell*, 2022-Ohio-1742 (Ohio Ct. App. 2022).  The court stated:

> {¶11} Upon review, we cannot conclude the trial court abused its discretion when it denied Mr. Cowell's post-sentence motion to withdraw his guilty plea.  In September 2010, Mr. Cowell was taking prescription medication including Prozac, Adderall, Abilify, and Klonopin and using cocaine.  Mr. Cowell reported being "out of control" a few weeks prior to committing these crimes.  Additionally, Mr. Cowell knew, at the time he pleaded guilty to the crimes of aggravated burglary, felonious assault, rape, and kidnapping that he was "blacking out" and experiencing memory issues.  Importantly, prior to entering a guilty plea in this matter, Mr. Cowell was twice evaluated for both competency and sanity, and was found to be competent to stand trial and sane at the time he committed these offenses.[]

> {¶12} Indeed, "a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime."  *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 69, quoting *State v. Cooey*, 46 Ohio St.3d 20, 26 (1989).  Because Mr. Cowell was previously determined to be sane at the time of the offense, Mr. Cowell cannot now offer expert psychiatric testimony to prove he lacked the requisite mens rea to commit these crimes or that Abilify *caused* him to involuntarily kidnap, assault, and rape the victims.  Further, Mr. Cowell did not provide a credible explanation to the trial court regarding his five-year delay in filing the motion to withdraw his guilty plea in 2021, when warnings regarding the side effects of Abilify became available in 2016.

ECF Doc. 6-1 at 614–15 (emphasis in original; footnote omitted).

On July 5, 2022, Cowell appealed to the Ohio Supreme Court.  ECF Doc. 6-1 at 617–18.

Cowell's memorandum in support of jurisdiction asserted four propositions of law:

> <u>Proposition of Law No. I</u>: The Court failed to recognize [Cowell] could not have possibly known the concealed side effects of the drug Abilify at the time of the crime in violation of the 5th and 14th Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution . . . .
>
> <u>Proposition of Law No. II</u>: The Court failed by not applying Ohio Revised Codes § 2901.21(A) and § 2901.21(B) properly in this case in violation of the 5th and 14th Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution . . . .
>
> <u>Proposition of Law No. III</u>: The Court failed to recognize [Cowell] was not responsible for his criminal conduct as a result of mental disease or defect and did not have the capacity to know the wrongfulness of his conduct or to conform his conduct to the requirements of law in violation of the 5th and 14th Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution . . . .
>
> <u>Proposition of Law No. IV</u>: The Court failed to recognize [Cowell's] plea of guilty was not made knowingly, intelligently or voluntarily due to [Cowell] being unaware of the cause of his criminal conduct and acts in violation of the 5th and 14th Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution . . . .

ECF Doc. 6-1 at 620–21 (sentence case added).  Cowell's supporting arguments largely mirrored those he made in his briefs to the Ohio Court of Appeals.  *See* ECF Doc. 6-1 at 627–38.

On August 16, 2022, the Ohio Supreme Court declined to accept jurisdiction.  ECF Doc. 6-1 at 648.

## II.    Law and Analysis

### A.    Motion to Expand the Record

Cowell has moved to expand the record to include a November 21, 2022 email from Norris Injury Lawyers ("Norris") to Cowell's mother, confirming that Norris "received a brief inquiry from Joshua Cowell on August 3, 2016 at approximately 12:12PM regarding a potential claim for Abilify Damages."  ECF Doc. 9-1.  According to Norris's legal assistant, "our records

reflect that we told him we could not assist him with a claim." *Id.* Cowell argues this new evidence is evidence of his "due diligence." ECF Doc. 9 at 1.

Generally, a federal court considering a petition for a writ of habeas corpus is limited to the record as it existed at the time the state court decided the petitioner's claims for relief unless the petitioner can satisfy the requirements of 28 U.S.C. § 2254(e). *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732, 1738 (2022). However, § 2254(e) does not apply to new evidence considered for a purpose other than the merits of the petitioner's claims. *Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013). A court can, however, expand the record to consider new evidence to the extent it sheds light on the issue of equitable tolling. *E.g.*, *Sapp v. Jenkins*, No. 2:17-cv-1069, 2023 U.S. Dist. LEXIS 21005, at *12–20 (S.D. Ohio Feb. 7, 2023); *Gordon v. Turner*, No. 5:13cv251, 2014 U.S. Dist. LEXIS 184241, at *24–25 (N.D. Ohio July 1, 2014); *Keenan v. Bagley*, No. 1:01CV2139, 2008 U.S. Dist. LEXIS 82228, at *2–5 (N.D. Ohio Sept. 22, 2008).

The only issue currently before the court is whether Cowell's petition should be dismissed as barred by AEDPA's statute of limitations. As discussed below, that involves an analysis into Cowell's diligence in learning of the factual predicate underlying his claims for relief and in pursuing them. Evidence that Cowell consulted with a personal injury firm in August 2016 about suing Bristol-Myers Squibb would shed light on his diligence in learning of the factual predicate of his claims. *See* ECF Doc. 9 at 1. Thus, I find an expansion appropriate for the limited purpose of assessing the timeliness of Cowell's petition.

Accordingly, Cowell's motion (ECF Doc. 9) is GRANTED.

### B.    Motion to Dismiss

Warden Gray argues that Cowell's § 2254 petition should be dismissed as time-barred under 28 U.S.C. § 2244(d)(1)(A) because it was filed more than one-year from when his

conviction became final, which the warden argues occurred on July 18, 2011.  ECF Doc. 6 at 3,

12.  The warden further argues that Cowell cannot show that his petition would be timely under

the extended statute of limitations in § 2244(d)(1)(D), because: (i) the factual predicate

underlying his new evidence-related claims became discoverable in 2016; and (ii) his post-2016

filings did not statutorily toll the limitations period.  ECF Doc. 6 at 12–15.  And the warden

finally argues that Cowell could not established a basis for equitable tolling.  ECF Doc. 6 at 16–

19.

Cowell responds that his petition is timely under § 2244(d)(1)(D), because he could not

have learned of the connection between his criminal behavior and Abilify until he read

Dr. Fetterolf's August 30, 2020 report.  ECF Doc. 8-2 at 6–7.  Cowell argues that although he

considered a lawsuit against Bristol-Myers Squibb in August 2016, all that was known at the

time was of the connection between Abilify and pathological gambling.  ECF Doc. 8-2 at 5–6.

He argues that it was only later, in 2017 and 2019, that reports came out adding compulsive

sexual behavior and hypersexuality as side effects.  ECF Doc. 8-2 at 6.  And his ability to access

even that information and bring his claims, he argues, was stymied by his limited access to

research tools (i.e., law library time limits, no internet, outdated law books, and $6 phone calls)

which were made worse by the Covid-19 pandemic.  ECF Doc. 8-2 at 9.

AEDPA imposes a one-year statute of limitations for those seeking a writ of habeas

corpus under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d)(1).  The one-year period begins to run from

the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The one-year statute of limitations is tolled during the pendency of properly filed motions for post-conviction relief or other collateral proceedings. 28 U.S.C. § 2244(d)(2).  A motion is "properly filed" when it complies with the state's rules governing filing.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  Once the one-year period has expired, it cannot be revived by subsequent state collateral review filings.  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012).

Because AEDPA's statute of limitations is not jurisdictional, it is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  If a petitioner seeks equitable tolling, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* at 649 (quotation marks omitted).  There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence."  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

### 1.     Timeliness

#### a.     Subsection (d)(1)(A)

As both parties appear to agree, Cowell's § 2254 petition is untimely under § 2244(d)(1)(A).  An abbreviated analysis confirms that to be the case.  Because Cowell did not pursue a direct appeal following his guilty pleas, his convictions became final when the 30-day period within which he could have filed a notice of appeal from the journal entry of sentencing

15

expired – July 18, 2011. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); Ohio App. R. 4(A)(1); Ohio Civ. R. 6(A); ECF Doc. 6-1 at 17, 651–52. The one-year statute of limitations under § 2244(d)(1)(A) began to run the following day and continued, uninterrupted, until it expired on July 17, 2012. Cowell's subsequent filings did not revive the already-expired statutory period. *See Keeling*, 673 F.3d at 460. Thus, Cowell's current petition, which he delivered for mailing on November 3, 2022, is untimely. 28 U.S.C. § 2244(d)(1)(A); *Houston v. Lack*, 487 U.S. 266, 270 (1988); *see also Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

**b.      Subsection (d)(1)(D)**

Cowell's claims for relief are premised on two factual predicates. The first factual predicate is that at the time of the offense Cowell experienced blackout states, compulsivity, and memory loss. The second is that these symptoms were previously unknown side effects of Abilify. Under either scenario, Cowell's habeas petition is untimely under § 2244(d)(1)(D).

If the factual predicate of Cowell's claims were construed as the *symptoms* he experienced at the time of the offense conduct, he knew of them well before he filed his § 2254 petition. Cowell reported to Windsor personnel a history of problems with impulse control and violent impulses. ECF Doc. 6-1 at 417, 427, 430. Windsor records also confirm a blackout episode and prior incidence of sexual assault. ECF Doc. 6-1 at 372, 441. And the issue of his legal sanity at the time of the offense conduct was twice evaluated before April 2011. *See* ECF Doc. 6-1 at 14–15; Summit Cnty. Ct. of Comm. Pleas, No. CR-2010-09-2645, Journal Entry dated 3/02/2011. Assuming Cowell's *symptoms* to be the factual predicate for Cowell's petition, he was aware of them before his convictions became final, in which case § 2244(d)(1)(D) would not apply. *See* 28 U.S.C. § 2244(d)(1) (the latest triggering date is the one which applies).

16

If the factual predicate were construed as Cowell's symptoms being *caused by* the previously unknown side effects of Abilify, Cowell's § 2254 petition would be untimely under § 2244(d)(1)(D).  According to Cowell's state court affidavit, Abilify's side effects first became public knowledge in 2016, and the first lawsuits related to those side-effects were consolidated in October 2016.  ECF Doc. 6-1 at 307–08.  And according to the various news articles Cowell attached to his state appellate brief on his appeal from the denial of his motion to withdraw his guilty plea, Abilify's side effects, including "compulsive urges to have sex, gamble, shop and more," were being reported as early as May 3, 2016.  ECF Doc. 6-1 at 548–49, 552.

Cowell claims *he* first learned of Abilify's association with compulsive behavior in December 2019, when he saw advertisements on television about pending lawsuits.  ECF Doc. 6-1 at 606.  However, Cowell's new evidence suggests that he already knew of Abilify's undisclosed side effects when he consulted Attorney Norris in August 2016 on whether he could bring a claim for damages against Bristol-Myers Squibb.  ECF Doc. 9; ECF Doc. 9-1.  How Cowell learned of that factual predicate he does not say; rather, he asserts that the effort shouldn't be held against him because the pending litigation concerned pathological gambling, and it was only later that studies came out adding "sexual behavior and hypersexuality" to the list of Abilify side effects.  ECF Doc. 82 at 6.  Compulsivity related to sexual behavior and hypersexuality were, however, among the side effects being reported in May 2016.  That Cowell didn't recognize the legal significance of those facts as it pertained to his convictions until later doesn't change the reality that he knew of the factual predicate for his claims at least as far back as August 3, 2016.  *See Brooks v. McKee*, 307 F. Supp.2d 902, 905–06 (E.D. Mich. 2004) (". . . AEDPA's limitations period begins to run when the petitioner knows or . . . could have discovered the important facts for the claim, not when the petitioner recognizes the facts' legal

17

significance.").  Nor does it matter that Cowell lacked expert causation evidence on how Abilify's side effects may have affected him until August 30, 2020.  *See id.* ("It is actual or putative knowledge of the pertinent facts of a claim that starts the clock running; the accrual of the statute of limitations does not await the collection of evidence which supports the facts.").

If we, for sake of analysis, use August 3, 2016 as the triggering date, the one-year statute of limitations under § 2244(d)(1)(D) began to run the next day.  Two post-conviction filings were pending at that time: (i) Cowell's second pro se motion to vacate; and (ii) his first verified petition for a writ of mandamus/procedendo.  *See* ECF Doc. 6-1 at 69, 651.  Assuming that the motion to vacate was "properly filed," the statutory period tolled until August 15 2016, when the trial court denied Cowell's motion.  ECF Doc. 6-1 at 67–68, 651.  And because Cowell had a right to appeal, the statute of limitations would be further tolled for the 30-day period during which he *could have* appealed – until September 14, 2016.  *Henderson v. Bunting*, 698 F. App'x 244, 246 (6th Cir. 2017); Ohio App. R. 4(A)(1).

However, Cowell's mandamus proceeding had no tolling effect.  For one, petitions for writs of mandamus and of procedendo are not part of Ohio's post-conviction or "other collateral review" process.  28 U.S.C. § 2244(d)(2); *see Wright v. Warden, Noble Corr. Inst.*, No. 1:15-cv-123, 2016 U.S. Dist. LEXIS 88748, at *16 (S.D. Ohio Feb. 11, 2016) (collecting cases), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 88746 (S.D. Ohio July 8, 2016).  For another, the verified petition  was not "properly filed," as it was dismissed for failure to comply with the procedural requirements of Ohio Rev. Code § 2969.25.  *Artuz*, 531 U.S. at 8; ECF Doc. 6-1 at 88–89, 168–70.

The statutory period under § 2244(d)(1)(D) therefore ran uninterrupted from September 15, 2016 until it expired on September 15, 2017.  Cowell's subsequent verified petitions for

mandamus relief, motion for leave to file a motion for new trial, and motion to withdraw his guilty could not revive it. *Keeling*, 673 F.3d at 460. Thus, Cowell's current petition is untimely under § 2244(d)(1)(D) by over five years.

### 2.  Equitable Tolling

Cowell has not established that equitable tolling is warranted. *Holland*, 560 U.S. at 649. Cowell argues that his 2016 consultation with Attorney Norris and state court filings soon after learning of Abilify's impact on his behavior demonstrate due diligence in pursuing his rights. *See* ECF Doc. 8-2 at 9. But these actions concern Cowell's diligence in pursuing his rights in Ohio state post-conviction proceedings. For equitable tolling, the diligence at issue is in the filing of his petition for a writ of habeas corpus in *federal* court. *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). Cowell has offered nothing to show he was diligent in the pursuit of his federal habeas claims.

Nor were Cowell's state court efforts reasonably diligent. Cowell knew from before his convictions that he had been taking Abilify and knew that he suffered from conditions he believed suggested he acted involuntarily or without the capacity to appreciate the wrongfulness of his conduct. He learned that Abilify caused side effects of compulsivity sometime before August 23, 2016. Yet Cowell did not attempt to pursue *post-conviction* relief on that basis until four years later. Although he contends the delay was excusable because he lacked the expert report connecting those side effects to his offense conduct specifically, equitable tolling "does not convey a right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim." *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003). Cowell also has not indicated what steps, if any, he took to keep himself apprised of Abilify-related developments in the years after his Attorney Norris consultation. And when Cowell did

attempt post-conviction relief based on Abilify's side effects, Cowell waited until four months after the trial court denied his motion for leave to file a motion for new trial before filing his motion to withdraw his guilty plea.  Thus, Cowell has not established that he was reasonably diligent even in pursuing his state law rights.

Moreover, Cowell has not shown that some extraordinary circumstance prevented him from filing his § 2254 petition on or before September 15, 2017.  *Holland*, 560 U.S. 649.  Cowell cites as intervening extraordinary circumstances: (i) Bristol-Myers Squibb's concealment of Abilify's side effects until "2016 – 2019"; (ii) 30-minute weekly access to LexisNexis on one of four law library computers; (iii) no internet access; (iv) costly phone access; (v) outdated printed legal research materials; (vi) lack of access to news articles, reports, and public notices related to Abilify; and (vii) Covid-19 related closures of the law library.  ECF Doc. 8-2 at 9.  None meets the threshold of extraordinary.  Despite Bristol-Myers Squibb's alleged concealment, Cowell learned of Abilify's previously undisclosed side effect in August 2016 and could have acted upon it without an expert report specific to him.  The prison conditions Cowell describes are common features of prison life, such that they are not "extraordinary."  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751–52 (6th Cir. 2011); *see also Simmons v. Brown*, No. 08-CV-01425, 2011 U.S. Dist. LEXIS 57096, at *24 (E.D. N.Y. May 26, 2011) ("[A] petitioner is not entitled to equitable tolling because he is incarcerated and had limited access to the internet – routine restrictions on prison life do not constitute extraordinary circumstances.").  And Cowell's bare assertion that the pandemic limited his law library access, without any explanation of how that impediment affected his ability to file the current petition on or before September 15, 2017, does not warrant equitable tolling.  *See United States v. Sloan*, No. 20-cr-285, 2022 U.S. Dist. LEXIS 160827, at *5 (N.D. Ohio Sept. 6, 2022), *aff'd sub nom. Sloan v. United States*, No. 22-

3808, 2023 U.S. App. LEXIS 7785 (6th Cir. Mar. 31, 2023) (unreported). Thus, Cowell has not established a basis for equitable tolling.

C. **Actual Innocence**

Cowell also has not established that he can overcome his untimeliness under the actual innocence exception. *McQuiggin*, 569 U.S. at 386. The evidence upon which Cowell relies consists of Dr. Fetterolf's August 20, 2020 expert report that Abilify caused Cowell to act compulsively at the time of the offense conduct. According to Cowell, such evidence would be relevant to support an involuntary intoxication defense or insanity defense and disprove the mental state required for any of the charges. But as the Ohio Court of Appeals stated, Cowell "may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." *Cowell*, 2022-Ohio-1742, ¶12 (internal quotation marks omitted). Intoxication, voluntary or not, is also not a "severe mental disease or defect" for purposes of an insanity defense under Ohio law. Ohio Rev. Code § 2901.01(A)(14); *State v. Johnston*, 2015-Ohio-450, ¶31–32 (Ohio Ct. App. 2015).

As for involuntary intoxication, Cowell could only avail himself of that defense based on the use of Abilify if he had properly used it. *State v. Williamson*, 2019-Ohio-4380, ¶48 (Ohio Ct. App. 2019). The evidence Cowell submitted in state court suggests that he misused his Abilify by also consuming cocaine, crack, Adderall, and, at the time of the offense conduct, alcohol. ECF Doc. 6-1 at 372, 430, 432, 462–63. Thus, Cowell's new evidence was not the kind in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995)

21

Because Cowell's § 2254 petition is untimely and he has not established grounds for equitable tolling or a gateway actual innocence claim, I recommend that Cowell's claims for relief be DISMISSED as untimely.

**III.    Certificate of Appealability[1]**

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the Court accepts my recommendation, Cowell will not be able to show that the dismissal of his petition as untimely under AEDPA's one-year statute of limitations is debatable among jurists. Cowell's deadline to file a timely habeas petition expired on September 15, 2017 at the latest. He did not file his petition until November 3, 2022. He has not met his burden to show that he is entitled to equitable tolling. And he has not presented a cognizable actual

---

[1] In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse order, a recommendation regarding the certificate of appealability is included. Rule 11(a), 28 U.S.C. foll. § 2254.

innocence claim.  Because jurists of reason would not find debatable the conclusion that

Cowell's petition is untimely or that he is entitled to proceed notwithstanding his failure to file a

timely petition, I recommend that no certificate of appealability issue in this case.

## IV.     Recommendation

Because Cowell's claim is barred by AEDPA's statute of limitations, he is not entitled to

equitable tolling, and he has not presented a viable claim of actual innocence, I recommend that

Warden Gray's motion to dismiss as untimely Cowell's petition (ECF Doc. 6) be GRANTED,

that Cowell's claims be DISMISSED, and that Cowell's petition for writ of habeas corpus (ECF

Doc. 1) be DENIED.

Cowell's motion to expand the record (ECF Doc. 9) is GRANTED.

Dated: June 28, 2023

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may
serve and file specific written objections to the proposed findings and recommendations of the
magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§
636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the
assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the
right to raise the issue on appeal either to the district judge or in a subsequent appeal to the
United States Court of Appeals, depending on how or whether the party responds to the report
and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be
specific and not merely indicate a general objection to the entirety of the report and
recommendation; "a general objection has the same effect as would a failure to object." *Howard
v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus

on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).